**MONTEIRO & FISHMAN LLP**
Marcus Monteiro, Esq.
    *Email: mmonteiro@mflawny.com*
91 N. Franklin Street, Suite 108
Hempstead, New York 11550
Tel.: 516/280.4600
Fax: 516/280.4530
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSE AMADOR, MARIO SANTOS, EVER SERRANO, ANGEL MORA, MARCOS MARTINEZ, HENRI CHAVEZ, JOSE ALFARO, KEISSON VILLANUEVA, GORGI SANTELLI, NICHOLAS CALLEGARI, KATIE PERALTA, JOSE RIVERA, JENNIFER CHIVITA, on behalf of themselves and others similarly situated,<br><br>               Plaintiff,<br><br>      -against-<br><br>STEVEN LIDONNICI, ANDREW SPINARIS, TANIA SERPAS,  ALL ISLAND COUNTER TOPS & MILLWORK, INC., ALL ISLAND MICA DESIGNS, INC., ABC CORP. d/b/a ALL ISLAND,<br><br>               Defendants. | INDEX NO.:<br><br>COMPLAINT<br><br>FLSA COLLECTIVE ACTION<br>RULE 23 CLASS ACTION |

Plaintiffs, JOSE AMADOR, MARIO SANTOS, EVER SERRANO, ANGEL MORA, MARCOS MARTINEZ, HENRI CHAVEZ, JOSE ALFARO, KEISSON AMADOR VILLANUEVA, GORGI SANTELLI,  NICHOLAS CALLEGARI,  KATIE PERALTA, JOSE RIVERA, and JENNIFER CHIVITA, on behalf of themselves and others similarly situated, complaining of the Defendants herein, by their attorneys, MONTEIRO & FISHMAN LLP, upon information and belief, and at all times hereinafter mentioned, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs allege on behalf of themselves, and others similarly situated current and former and current employees of Defendants who elect to opt into this action, that they are entitled to, under 29 U.S.C. § 201 *et seq*. ("FLSA"), *inter alia*, from Defendants:  (i) unpaid wages for overtime work performed, (i) liquidated damages, (iii) attorneys' fees, (iv) interest, and (v) all costs and disbursements associated with this action as more fully detailed below.

2.     Plaintiffs further allege that they are entitled to, under New York Labor Law, Art. 6, §§ 190 *et seq*. and Art. 19, §§ 650 *et seq.*, (collectively "NYLL"), and N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 142 and 146 from Defendants: (i) unpaid wages for overtime  work  performed, (ii) unpaid spread of hours wages for each day Plaintiffs worked ten or more hours, (iii)  liquidated damages for failure to pay overtime premium and spread of hours pay, (iv) liquidated damages for failure to furnish Plaintiff a notice and acknowledgment at the time of hiring, (v) attorneys' fees, (vi) interest, and ( v i i )  all costs and disbursements associated with this action as more fully detailed below.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and  1337 due to Plaintiffs' claims under FLSA, and  supplemental  jurisdiction  over  the  New York state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper as Defendants conduct business in Suffolk County, the wrongs complained of herein occurred in Nassau County and under 28 U.S.C. § 1391.

## PARTIES

*Plaintiffs*

5.     Plaintiff JOSE AMADOR resides in NASSAU County, New York.

6.     Plaintiff MARIO SANTOS resides in NASSAU County, New York.

2

7.    Plaintiff EVER SERRANO resides in NASSAU County, New York.

8.    Plaintiff ANGEL MORA resides in NASSAU County, New York.

9.    Plaintiff MARCOS MARTINEZ resides in NASSAU County, New York.

10.    Plaintiff HENRI CHAVEZ resides in NASSAU County, New York.

11.    Plaintiff JOSE ALFARO resides in SUFFOLK County, New York.

12.    Plaintiff KEISSON VILLANUEVA resides in NASSAU County, New    York.

13.    Plaintiff GORGI SANTELLI resides in NASSAU County, New York.

14.    Plaintiff NICHOLAS CALLEGARI resides in NASSAU County, New York.

15.    Plaintiff KATIE PERALTA resides in NASSAU County, New York.

16.    Plaintiff JOSE RIVERA resides in NASSAU County, New York.

17.    Plaintiff JENNIFER CHIVITA resides in SUFFOLK County, New York.

*Defendants*

18.    All Defendants are collectively referred to as "Defendants."

19.    ALL ISLAND COUNTER TOPS & MILLWORK INC.  is a New York Corporation whose principal place of business is at 275 Adams Blvd., Farmingdale, NY 11735.

20.    ALL ISLAND MICA DESIGNS, INC., is a New York Corporation whose principal place of business is at 9 Landsdowne Avenue, Merrick, NY 11566, and/or 2481 Charles Court, Bellmore, NY 11710, and/or 8 Birch Place, Farmingdale, NY 11735.

21.    Plaintiffs do not know the true name, corporate entity, or the capacity of that defendant sued herein as ABC CORP. d/b/a ALL ISAND, and therefore is suing such defendant by a fictitious name.  Plaintiffs intend to amend this Complaint to allege its true name and capacity when ascertained.

3

22.     ALL ISLAND COUNTER TOPS & MILLWORK INC., ALL ISLAND MICA DESIGNS, INC., AND ABC CORP. d/b/a/ ALL ISLAND (collectively, the "CORP.") share interrelation of operations; common management; centralized control of labor relations; and common ownership or financial control sufficient to be considered a single employer or single integrated enterprise and therefore, subject to joint liability as an integrated enterprise.

23.     The CORP. is a full-service surfacing material company, that procures, fabricates, and installs all types of natural stone, quartz and other engineered stone, MICA tops, solid surface, laminate, or custom and commercial millwork.  The CORP. also services the contractor trades (dealers, contractors, interior designers, and builders) for their surfacing needs.

24.     Upon information and belief, STEVEN LIDONNICI ("MR. LIDONNICI") is the Chief Executive Officer, or a corporate officer of the CORP.

25.     MR. LIDONNICI is the Chief Executive Officer, or corporate officer of JLCJ REALTY LLC.

26.      Upon information and belief, MR. LIDONNICI resides at 8 Birch Avenue, Farmingdale, NY 11735.

27.     Upon information and belief,  MR. LIDONNICI resides at 66 Ruby Lane, Plainview, NY 11803.

28.     Upon information and belief, MR. LIDONNICI is: an officer, owns, is a majority shareholder, an agent of, has active control of the CORP., has operational control of the CORP., is the manager of the CORP., sets the weekly work-hours of the employees, has the power to establish the wages of the employees of the CORP., implemented and supervised the wage and hour practices and policies relating to employees, controlled significant business functions of the  CORP., determined employee salaries, made hiring decisions, maintains the employee records of the

4

CORP., acts directly and indirectly for and in the interest of the CORP., hires and fires employees thereof, and exercises sufficient control of the operations of the Plaintiff so as to be an "employer" of Plaintiffs under FLSA 29 USC § 203(d), and N.Y. Lab. Law § 190(3).

29.    Upon information and belief, ANDREW SPINARIS ("MR. SPINARIS") is the Chief Executive Officer or a corporate officer of the CORP.

30.    MR. SPINARIS is the Chief Executive Officer, or corporate officer of JLCJ REALTY LLC.

31.    Upon information and belief, MR. SPINARIS is: an officer, owns, is a majority shareholder, an agent of, has active control of the CORP., has operational control of the CORP., sets the weekly work-hours of the employees, has the power to establish the wages of the employees of the CORP., implemented and supervised the wage and hour practices and policies relating to employees, controlled significant business functions of the CORP., determined employee salaries, made hiring decisions, maintains the employee records of the CORP., acts directly and indirectly for and in the interest of the CORP., hires and fires employees thereof, and exercises sufficient control of the operations of the Plaintiff so as to be an "employer" of Plaintiffs under FLSA 29 USC § 203(d), and N.Y. Lab. Law § 190(3).

32.    Upon information and belief, MR. SPINARIS resides at 4 Grouse Place, Commack, NY 11725.

33.    Upon information and belief, MR. SPINARIS resides at 194 Mastic Blvd., Mastic, NY 11950.

34.    Upon information and belief, TANIA SERPAS ("MS. SERPAS") is a manager or a corporate officer of the CORP.

35.    Upon information and belief, MS. SERPAS is: an officer, owns, is a majority shareholder, an agent of, has active control of the CORP., has operational control of the CORP., sets the weekly work-hours of the employees, has the power to establish the wages of the employees of the CORP., implemented and supervised the wage and hour practices and policies relating to employees, controlled significant business functions of the  CORP., determined employee salaries, made hiring decisions, maintains the employee records of the CORP., acts directly and indirectly for and in the interest of the CORP., hires and fires employees thereof, and exercises sufficient control of the operations of the Plaintiff so as to be an "employer" of Plaintiffs under  FLSA 29 USC § 203(d), and N.Y. Lab. Law § 190(3).

36.    Upon information and belief, MS. SERPAS resides 321 Park Avenue, Freeport, NY 11520.

37.    Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS are in charge of hiring Plaintiffs.

38.    Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS decided the job duties that Plaintiffs preformed.

39.    Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS determined Plaintiffs' hourly rate of pay.

40.    Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS determined Plaintiffs' work schedule.

41.    Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS determined the number of hours that Plaintiffs' worked.

42.    Defendants h MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS participated, controlled, directed, and have operational control of the day to day operations of the CORP.

43. Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS controlled and managed Plaintiffs' employment, including the amount of overtime that they worked each workweek.

44. Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS dictated, controlled, and ratified the wage and hour and related employee compensation policies.

45. Defendants MR. LIDONNICI, MR. SPINARIS, and MS. SERPAS were aware of Plaintiffs work hours, but failed to pay Plaintiffs the full and proper amount of wages they were entitled to each week.

46. The CORP. conducts and carries on business in the County of NASSAU and Suffolk, State of New York.

47. The CORP. exercises sufficient control of the operations of the Plaintiffs so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

48. At all relevant times, Defendants employed more than two persons and have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

49. Upon information and belief, during each of the three years preceding the date of this complaint, Defendants have had gross revenues in excess of $500,000 per year.

50. At all relevant times, Defendants had, and continue to have, employees handle and/or work on goods or materials that have been moved in, or produced, for commerce.

51. At all relevant times, Plaintiffs, in their work for Defendants, have handled and worked on goods or materials that have been moved in, or produced, for commerce.

52. At all relevant times, the CORP. was an "enterprise engaged in commerce or in the production of goods for commerce" under FLSA 29 U.S.C. § 203.

7

## FLSA COLLECTIVE ACTION ALLEGATIONS

53.     Plaintiffs bring these claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. 216(b), on behalf of all non-exempt persons employed by Defendants at any New York location on or after the date that is three years before the filing of the Complaint in this case as defined herein ("Collective Plaintiffs").

54.     At all relevant times, Plaintiffs and the other Collective Plaintiffs are, and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them one and one half times their hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other Collective Plaintiffs.

55.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 16(b) of the FLSA, 29 U.S.C. 216(B). The Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the Collective Plaintiffs via first class mail to the last address known to Defendants.

56.     The named Plaintiffs are representative of those other workers and is acting on behalf of Defendants' current and former employees' interest, as well as his own interest in bringing this action.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs also bring their N.Y. Lab. Law claims pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at any New York location on or after the date that is six years before the filing of the

Complaint in this case as defined herein (the "Class Period").

58.    All said persons, including Plaintiffs, are referred to herein as the "Class" or the "Rule 23 Class."  The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under the F.R.C.P. 23.

59.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than twenty (20) members of the Class.

60.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

61.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are

9

experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

62.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. In addition, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

63.     Upon information and belief, Defendants and other employers throughout the state

violated the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

64.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Plaintiffs and the Rule 23 Class are non-exempt from entitlement to overtime compensation for all hours worked in excess of 40 hours per week;

b)    What policies, practices and procedures Defendants implemented regarding payment of overtime compensation, spread of hours, and breaks and meal periods;

c)    Whether Defendants failed to pay Plaintiffs and the Rule 23 Class overtime compensation for all hours worked in excess of forty (40) hours per week within the meaning of the NYLL Article 19 § 650 *et seq.* and the supporting NYDOL Regs., 12 N.Y.C.R.R. Part 142;

d)    Whether Defendants failed to pay Plaintiffs and the Rule 23 Class spread of hours pay by failing to pay an additional hour's pay when they worked more than ten (10) hours in a day, as provided by 12 N.Y.C.R.R. sect. 142-2.4;

e)    Whether Defendants failed to provide Plaintiffs and the Rule 23 Class breaks and meal periods in violation of NYLL sect. 162(4);

f)    Whether Defendants wrongfully interfered with the rights of Plaintiffs and the Rule 23 Class to immediate possession of earned wages and, thus, engaged in unlawful conversion of their compensation;

g)    The nature and extent of the Rule 23 Class-wide injury and the appropriate measure of damages for the Class; and

h)    Whether Defendants failure to pay Plaintiffs and the Rule 23 overtime compensation for all hours worked in excess of forty (40) hours per week, spread of hours pay was done willfully or with reckless disregard for the

applicable federal and state wage and hours laws, and whether Defendants' failure to afford proper meal and break period was done willfully or with reckless disregard for the applicable federal and state wage and hours laws.

## STATEMENT OF FACTS

65.     JOSE AMADOR was employed by Defendants as a fabricator/installer/ construction worker, who performed other miscellaneous duties from about February 2015 until February 2019.

66.     During the term of his employment, MR. AMADOR generally worked between 51 and 57 hours in a workweek.  MR. AMADOR was originally paid $27.00 per hour when he first started, then $30 per hour in 2016, then 50.00 per hour in about June/July 2017, until the end of his employment term.  He was paid straight pay from February 2015 until about June/July 2017 for all hours worked, without an overtime premium for those hours worked over 40 in a workweek. In June/July 2017, he was paid $50.00 per hour for 40 hours worked and was not given any pay for any hours worked over 40 in a workweek.  In 2015, he was paid in cash, in 2016 he was paid in check and cash.  In 2017 until the end of his employment term, his checks were in the amount of $600, with the remainder in cash.

67.     During the workweek of December 3, 2018 to December 9, 2018, MR. AMADOR worked about 57 hours, but was only paid $600 in check, an additional $1,500 in cash representing his pay of $50 per hour for 40 hours week.  MR. AMADOR was not paid for those 17 hours worked over 40, and was therefore not paid minimum wage, spread of hours or overtime pay for those hours.

68.     The paystubs provided to MR. AMADOR were false and failed to properly account for wages paid or hours worked.

69.     MARIO SANTOS was employed by Defendants as an installer/ construction

worker, who performed other miscellaneous duties, from about September 2016 until March 2019.

70.    During the term of his employment, MR. SANTOS generally worked about 66 hours in a workweek.   MR. SANTOS was originally paid $11.00 per hour "on the books" for those hours worked, as reflected on his paystubs.  MR. SANTOS was then paid in cash for those hours he worked "off the books" for the additional hours he worked that are not reflected on his paystubs.  He was paid straight pay for all those hours worked in a workweek, without an overtime premium for those hours worked over 40 in a workweek.

71.    During the workweek of April 23, 2018 to April 29, 2018, MR. SANTOS worked about 66 hours, but was only paid $253.00 by check, and about $688.00 in cash.  MR. SANTOS was not paid an overtime premium for those hours worked over 40 in that workweek.

72.    The paystubs provided to MR. SANTOS were false and failed to properly account for wages paid or hours worked.

73.    EVER SERRANO was employed by Defendants as a fabricator/installer/ construction worker, who performed other miscellaneous duties from about September 2010 until about October 2015, then again from April 2016 until October 2018.

74.    During the term of his employment, MR. SERRANO generally worked between 50 to 57 hours in a workweek.  MR. SERRANO was paid as follows: 2010: $18 per hour in cash – straight pay with no overtime premium; 2011: $18 total per hour, $9.00 per hour was paid "on the books" as reflected by his paystub, and $9.00 per hour was paid "off the books" until 40 hours was reached, then he was paid $18 per hour cash "off the books" for  his overtime hours (straight pay with no overtime premium); 2012 to 2015: $19 total per hour, $9.00 per hour was paid "on the book" as reflected by his paystub, and $9.00 per hour cash "off the books" until 40 hours was reached, then he was paid $19 cash per hour "off the books" for his overtime hours (straight pay

with no overtime premium); 2016: $21 total per hour, $9.00 per hour was paid "on the book" as reflected by his paystub, and $12.00 per hour was paid "off the books" until 40 hours was reached, then he was paid $21 cash per hour "off the books" for his overtime hours (straight pay with no overtime premium); 2017: $23 total per hour, $11.00 per hour was paid "on the book" as reflected by his paystub, and $12.00 per hour was paid "off the books" until 40 hours was reached, then he was paid $23 cash per hour "off the books" for his overtime hours (straight pay with no overtime premium); 2018: $24 total per hour, $11.00 per hour was paid "on the book" as reflected by his paystub, and $13.00 per hour was paid "off the books" until 40 hours was reached, then he was paid $24 cash per hour "off the books" (straight pay with no overtime premium).

75.    During the workweek of August 13, 2018 to August 19, 2018 MR. SERRANO worked about 57 hours, but was only paid $440.00 by check, and about $221.00 in cash.  MR. SERRANO was not paid an overtime premium for those hours worked over 40 in that workweek.

76.    The paystubs provided to MR. SERRANO were false and failed to properly account for wages paid or hours worked.

77.    ANGEL MORA was employed by Defendants as a fabricator/construction worker, who performed other miscellaneous duties from about June 2011 until November 2017.

78.    During the term of his employment, MR. MORA generally worked between 54 and 60 hours in a workweek.  MR. MORA was originally paid $20.00 per hour when he first started, then $21 per hour in September 2016, until the end of his employment term.  MR. MORA was always paid cash. MR. MORA was paid straight pay for all hours worked, without an overtime premium for those hours worked over 40 in a workweek.

79.     During the workweek of August 14, 2017 to August 19, 2017, MR. MORA worked about 60 hours, but was only paid $1,260 in cash.  MR. MORA was not paid an overtime

premium for those hours worked over 40 in that workweek.

80.     Because MR. MORA was paid cash, he was not provided a paystub, or any accounting of how his wages were calculated.

81.     MARCOS MARTINEZ has been employed by Defendants as a fabricator/installer/ construction worker, who performed other miscellaneous duties from about August 2010 until the present.

82.     During the term of his employment, MR. MARTINEZ generally works between 49 to 61.5 hours in a workweek.   MR. MARTINEZ was paid as follows: 2010: $18 per hour in cash – straight pay with no overtime premium; 2011: $18 total per hour, $9.00 was paid "on the book" as reflected by his paystub, and $9.00 in cash was paid "off the books" until 40 hours was reached, then her was paid $18 cash per hour "off the books" (straight pay with no overtime premium); 2014: $20 total per hour, $9.00 was paid "on the book" as reflected by his paystub, and $11.00 cash per hour was paid "off the books" until 40 hours was reached, then he was paid $20 cash per hour "off the books" (straight pay with no overtime premium); 2015: $25 total per hour, $9.00 was paid "on the books" as reflected by his paystub, and $16.00 cash per hour was paid "off the books" until 40 hours was reached, then $25 cash per hour "off the books" (straight pay with no overtime premium); 2017: $25 total per hour, $11.00 was paid "on the book" as reflected by his paystub, and $14.00 cash per hour was "off the books" until 40 hours was reached, then $25 cash per hour "off the books" (straight pay with no overtime premium); 2019: $25 total per hour, $12.00 was paid "on the book" as reflected by his paystub, and $13.00 cash per hour was paid "off the books" until 40 hours was reached, then $25 per hour cash "off the books" (straight pay with no overtime premium).

83.     During the workweek of August 20, 2018 to August 26, 2018 MR. MARTINEZ

worked about 61.5 hours, but was only paid $440.00 by check, and about $537.50 in cash. MR. MARTINEZ was not paid an overtime premium for those hours worked over 40 in that workweek.

84.    The paystubs provided to MR. MARTINEZ were false and failed to properly account for wages paid or hours worked.

85.    HENRI CHAVEZ has been employed by Defendants as a fabricator/construction worker, who performed other miscellaneous duties from about August 2016 until the present.

86.    During the term of his employment, MR. CHAVEZ generally works about 56.5 hours in a workweek. MR. CHAVEZ was originally paid $12.00 per hour when he first started, then $13 per hour in June 2018, until the present. MR. CHAVEZ has always been paid in cash. MR. CHAVEZ was paid straight pay for all hours worked, without an overtime premium for those hours worked over 40 in a workweek.

87.    During the workweek of August 14, 2017 to August 19, 2017, MR. CHAVEZ worked about 56.5 hours, but was only paid $678 in cash. MR. CHAVEZ was not paid an overtime premium for those hours worked over 40 in that workweek.

88.    JOSE ALFARO has been employed by Defendants as a fabricator/construction worker, who performed other miscellaneous duties from about April 2016 until June 2019.

89.    During the term of his employment, MR. ALFARO generally works about 56.5 hours in a workweek. MR. ALFARO was paid as follows: 2016: $11 per hour in cash – straight pay with no overtime premium; October 2017: $14 total per hour, $10.00 was paid "on the book" as reflected by his paystub, and $4.00 cash per hour was paid "off the books" until 30 hours was reached, then $14 per hour cash "off the books" (straight pay with no overtime premium); January 2018: $14 total per hour, $11.00 was paid "on the books" as reflected by his paystub, and $3.00 cash per hour was paid "off the books" until 30 hours was reached, then $14 per hour cash "off

the books" (straight pay with no overtime premium); January 2019: $16 total per hour, $12.00 was paid "on the book" as reflected by his paystub, and $4.00 cash per hour was paid "off the books" until 30 hours was reached, then $16 per hour cash "off the books"– (straight pay with no overtime premium).

90.    During the workweek of August 6, 2018 to August 12, 2018 MR. ALFARO worked about 56.5 hours, but was only paid $330.00 by check, and about $371.00 in cash.  MR. ALFARO was not paid an overtime premium for those hours worked over 40 in that workweek.

91.    The paystubs provided to MR. ALFARO were false and failed to properly account for wages paid or hours worked.

92.    KEISSON VILLANUEVA was employed by Defendants as a fabricator/polisher, who performed other miscellaneous duties, from about May 2018 until March 2019.

93.    During the term of his employment, MR. VILLANUEVA generally worked between 49 to 58 hours in a workweek.   MR. VILLANUEVA was paid $11.00 "on the books" for those hours worked as reflected on his paystubs.  MR. VILLANUEVA was then paid in cash for those hours he worked "off the books" for those additional hours he worked that are not reflected on his paystubs.  He was paid straight pay for all those hours worked in a workweek, without an overtime premium for those hours worked over 40 in a workweek.

94.    During the workweek of December 3, 2018 to December 9, 2018, MR. VILLANUEVA worked about 58 hours, but was only paid $220.00 by check, and about $494.00 in cash.  MR. VILLANUEVA was not paid an overtime premium for those hours worked over 40 in that workweek.

95.    The paystubs provided to MR. VILLANUEVA were false and failed to properly account for wages paid or hours worked.

96.     GORGI SANTELLI was employed by Defendants as an installer/helper, who performed other miscellaneous duties from about July 2018 until November 2018.

97.     During the term of his employment, MR. SANTELLI generally worked between 55 to 65 hours in a workweek.  MR. SANTELLI was paid $14.37 per hour until the end of his employment.  MR. SANTELLI has always been paid in cash. MR. SANTELLI was paid straight pay for all hours worked, without an overtime premium for those hours worked over 40 in a workweek.

98.     During the workweek of September 3, 2018 to September 7, 2018, MR. SANTELLI worked about 55 hours, but was only paid $790.37 in cash.  MR. SANTELLI was not paid an overtime premium for those hours worked over 40 in that workweek.

99.     NICHOLAS CALLEGARI was employed by Defendants as an estimator/office worker, who performed other miscellaneous duties from about April 2013 until April 2017 and from about March 2018 until February 2019.

100.    During the term of his employment, MR. CALLEGARI generally worked between 50.25 to 53.25 hours in a workweek.   MR. CALLEGARI was paid as follows: March 2013: $20 total per hour in cash (straight pay with no overtime premium); October 2013: $22 total per hour, partly "on the books" as reflected in his paystubs, and partly in cash "off the books" for those additional hours that are not reflected on his paystubs of that year (straight pay with no overtime premium); October 2014: $28 total per hour, partly "on the books" as reflected in his paystubs, and partly in cash "off the books" for those additional hours that are not reflected on his paystubs of that year (straight pay with no overtime premium); 2015: $28 total per hour, $8.75 per hour "on the books" for those hours worked as reflected on his paystubs, $16.25 cash per hour was paid "off the books" until about 23 hours was reached, then $28 per hour cash "off the books" (straight

pay with no overtime premium); 2016: Same pay structure as 2015; 2017: $28 total per hour, $10.00 was paid "on the books" for those hours worked as reflected on his paystubs, and $18.00 cash per hour was paid "off the books" until 23 hours was reached, then $28 cash per hour cash (straight pay with no overtime premium); 2018: $28 total per hour, $28 per hour "on the books" for those hours worked as reflected on his paystubs until 40 hours was reached, then he was paid $28 cash per hour "off the books" (straight pay with no overtime premium).

101.    During the workweek of March 6, 2017 to March 12, 2017, MR. CALLEGARI worked about 50.25 hours, but was only paid $230.00 by check, and about $763 in cash.  MR. CALLEGARI was not paid an overtime premium for those hours worked over 40 in that workweek.

102.    The paystubs provided to MR. CALLEGARI were false and failed to properly account for wages paid or hours worked.

103.    KATIE PERALTA was employed by Defendants as an office assistant/ bookkeeper, who performed other miscellaneous duties from about March 2017 until February 2018.

104.    During the term of her employment, MS. PERALTA generally worked between 40 to 45 hours in a workweek.  MS. PERALTA was paid as follows: March 2017: $17 cash per hour for all hours worked (straight pay with no overtime premium); April 2017: $17 total per hour, $17 per hour "on the books" until 20 hours was reached as reflected in her paystubs, then $17 per hour cash "off the books" (straight pay with no overtime premium): 2018: Same pay structure as 2017.

105.    During the workweek of October 9, 2017 to October 15, 2017, MS. PERALTA worked about 45 hours, but was only paid $340.00 by check, and about $425 in cash.  MS.

PERALTA was not paid an overtime premium for those hours worked over 40 in that workweek.

106.    The paystubs provided to MS. PERALTA were false and failed to properly account for wages paid or hours worked.

107.    JOSE RIVERA was employed by Defendants as a fabricator/construction worker, who performed other miscellaneous duties from 1999-2004 and then again from March 2012 until the present.

108.    During the term of his employment, MR. RIVERA generally worked about 53 hours in a workweek.  MR. RIVERA was paid as follows: March 2012: $16.50 total per hour, partly "on the books" as reflected in his paystubs, and partly in cash "off the books" for those additional hours that are not reflected on his paystubs of that year (straight pay with no overtime premium); 2013: Same pay structure as 2012; 2014: $17 total per hour, partly "on the books" as reflected in his paystubs, and partly in cash "off the books" for those additional hours that are not reflected on his paystubs of that year (straight pay with no overtime premium); 2015: Same pay structure as 2014; April 2016: $18 total per hour, partly "on the books" as reflected in his paystubs, and partly in cash "off the books" for those additional hours that are not reflected on his paystubs of that year (straight pay with no overtime premium); 2017: Same pay structure as 2016; 2018: $18 total per hour, $12.50 per hour "on the books" for those hours worked as reflected on his paystubs, $5.50 cash per hour was paid "off the books" until about 40 hours was reached, then $18 per hour cash "off the books" (straight pay with no overtime premium); 2019: Same pay structure as 2018.

109.    During the workweek of September 10, 2018 to September 16, 2018, MR. RIVERA worked about 53 hours, but was only paid $500.00 by check, and about $454 in cash. MR. RIVERA was not paid an overtime premium for those hours worked over 40 in that

workweek.

110. The paystubs provided to MR. RIVERA were false and failed to properly account for wages paid or hours worked.

111. JENNIFER CHIVITA was employed by Defendants as a receptionist who performed other miscellaneous office duties from March 2016 until about August 2018.

112. During the term of his employment, MS. CHIVITA generally worked about 44.5 hours in a workweek. MS. CHIVITA was paid as follows: 2016: Apx. $160 per week "on the books" and apx. $540 "off the books" in cash (straight pay with no overtime premium): 2017: Same pay structure as 2016; 2018: Same pay structure as 2017.

113. During the workweek of August 14, 2017 to August 19, 2017 worked 44.5 hours, but was only paid $160 by check, and about $540 in cash. MS. CHIVITA was not paid an overtime premium for those hours worked over 40 in that workweek.

114. Plaintiffs did not supervise any other employee and had no supervisory authority whatsoever over any other person.

115. While Plaintiffs and Collective and Class plaintiffs, worked in excess of forty hours a week, Defendants willfully failed to pay them minimum wage and overtime compensation for the overtime hours worked.

116. Also, Plaintiffs and Collective and Class plaintiffs, typically worked more than ten hours each day during the week, yet Defendants willfully failed to pay them spread of hours wages.

117. When Defendants hired Plaintiffs, and Collective and Class plaintiffs, they never furnished them with a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day

designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

118.    Defendants never paid Plaintiffs, and Collective and Class plaintiffs, wages with a pay statement containing the following information: employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances.

119.    Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the NYLL.

120.    During all relevant times, Defendants failed to maintain accurate and sufficient records.

121.    Defendants knew that nonpayment of overtime would economically injure Plaintiffs, the FLSA Collective Plaintiffs and members of the Class, and violated State and Federal laws.

122.    Defendants committed the following acts against Plaintiffs, the FLSA Collective Plaintiffs and members of the Class knowingly, intentionally and willfully.

**FIRST CLAIM FOR RELIEF**
**(FLSA Claims, 29 U.S.C. §§ 201, et seq.,**
**Brought by Plaintiffs on Behalf of**
**Themselves and the FLSA Collective Plaintiffs)**

123.    Plaintiffs, on behalf of themselves, the Class and the FLSA Collective Plaintiffs,

reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

124.    The allegations herein shall specifically include that term which is six years from the filing of this Compliant.

125.    Defendants failed to keep accurate records in accordance with the FLSA, 29 U.S.C. § 203(c), and 29 C.F.R. § 516.

126.    Defendants also failed to post notices of employees' rights as required by 29 C.F.R. § 516.4.

127.    Because of Defendants' failure to post notices of the employees' rights, Plaintiffs and each collective/class member is entitled to the equitable tolling of their claims from the start of the period of time during which Defendants failed to post such notices.

128.    The foregoing conduct, as alleged, constitutes a willful violation of FLSA under 29 U.S.C. § 255(a).

129.    As a result of the Defendants failure to record, report, credit and/or compensate its employees, including the Plaintiff and the collective action members, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

130.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

131.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid compensation, for Defendants failure to comply with its obligations to post notices, keep records, liquated damages as provided by the FLSA for

minimum wage violations, attorney's fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq*.**
**Brought by Plaintiffs on Behalf of Themselves**
**And the FLSA Collective Plaintiffs)**

132.    Plaintiffs, on behalf of themselves, the Class and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

133.    The allegations herein shall specifically include that term which is six years from the filing of this Compliant.

134.    Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiff for those hours worked in excess of forty hours per workweek.

135.    Defendants has and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiffs and FLSA Collective Plaintiffs at one and one half times the minimum wage for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

136.    Defendants willfully, knowingly, regularly and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rate of one and a half times the federal minimum wage for hours worked in excess of forty (40) hours per workweek.

137.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such

other legal and equitable relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**(New York State Minimum Wage Act)**
**(New York Labor Law §§ 650 et seq. Brought by**
**Plaintiffs on Behalf of Themselves and the Class)**

138.    Plaintiffs, on behalf of themselves, the Class and other FLSA Collective Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

139.    The allegations herein shall specifically include that term which is six years from the filing of this Compliant.

140.    Defendants employed Plaintiff and the Class within the meaning of N.Y. Lab. Law §§ 2 and 651, and 12 N.Y.C.R.R. 146-3.2.

141.    Defendants knowingly and willfully paid the Plaintiffs and the Class less than the New York State minimum wage.

142.    Defendants did not pay Plaintiffs and the Class the New York minimum wage for all hours worked.

143.    Defendants' failure to pay Plaintiffs and the Class the New York minimum wage was willful.

144.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post- judgment interest, costs and attorney's fees, as provided by N.Y. Lab. Law §663.

**FOURTH CLAIM FOR RELIEF**
**(New York Overtime Violations)**
**(New York Minimum Wage Act, N.Y. Stat. §§ 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 142 – 2.2 and 146-1.4**
**Brought by Plaintiffs on Behalf of Themselves and the Class)**

145.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

146.    The allegations herein shall specifically include that term which is six years from the filing of this Compliant.

147.    Defendants willfully violated Plaintiffs' rights by failing to pay them, and the Class, overtime compensation at a rate of not less than one-half times his hourly wage for each hour worked in excess of forty hours per workweek, violating 12 N.Y.C.R.R. §§ 146-1.4, 142-2.2.

148.    As a result of Defendant's willful and unlawful conduct, Plaintiffs and the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and- post judgment interest, costs and attorney's fees, as provided by N.Y. Lab. Law § 663.

**FIFTH CLAIM FOR RELIEF**
**(New York Spread of Hours Provisions)**
**(N.Y. Lab. L. § 650 *et seq*., and N.Y. Comp. Code R. & Regs. Tit. 12, § 142-2.4(a),**
**142-2.18 and 146-1.6 Brought by Plaintiffs on Behalf of Themselves and the Class)**

149.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

150.    The allegations herein shall specifically include that term which is six years from

the filing of this Compliant.

151.    Plaintiffs and the Class regularly had workdays that lasted more than ten (10) hours.

152.    Defendants willfully and intentionally failed to compensate Plaintiffs and the Class one hour's pay at the basic New York minimum hourly wage rate when their workdays exceeded ten (10) hours, violating New York's spread of hours compensation regulations under 12 N.Y.C.C.R. § 146-1.6.

153.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## SIXTH CLAIM FOR RELIEF
### (New York Notice Requirements)
### (N.Y. Lab. L. §§195,198 Brought by Plaintiffs on Behalf of Themselves and the Class)

154.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

155.    Defendants failed to furnish to Plaintiff at the time of hiring, and on an annual basis 2012, 2013 and 2014, as required under N.Y. Lab. Law § 195(1)(a), a notice, in English as well as the employee's primary language, that is acknowledged, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names

used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of N.Y. Lab. Law § 195(1) and 12 N.Y.C.C.R. § 146-2.2.

156.    Due to Defendants' violating N.Y. Lab. Law § 195(1), Plaintiffs, and the Class, are entitled to recover from Defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000.00, reasonable attorney's fees, and costs and disbursements of this action under N.Y. Lab. Law § 198(1-b).

**SEVENTH CLAIM FOR RELIEF**
**(New York Wage Statement Requirements)**
**(N.Y. Lab. L. §195 and N.Y. Comp. Code R. & Regs. 12, § 146-2.3**
**Brought by Plaintiffs on Behalf of Themselves and the Class)**

157.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

158.    Defendants paid Plaintiffs, and the Class,  wages, either by cash, or with a pay stub containing the following missing and/or willfully incorrect information: employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances, violating N.Y. Lab. Law § 195(3) and 12 N.Y.C.C.R. § 146-2.3.

159.    Due to Defendants violating N.Y. Lab. Law § 195(3) and 12 N.Y.C.C.R. § 146-2.3, Plaintiffs are entitled to recover from Defendants liquidated damages of $250.00 per workweek that the violation occurred, up to a maximum of $5,000.00, reasonable attorney's fees, and costs and disbursements of the action, pursuant to N.Y. Lab. Law § 198(1-d).

## EIGHTH CLAIM FOR RELIEF
### (New York Records Requirements)
### (N.Y. Lab. L. §195 and N.Y. Comp. Code R. & Regs. 12, § 146-2.1)

160.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

161.    Defendants are required to keep records for six years, which must include an accurate records of employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions and/or itemized allowances.

162.    Despite its obligations, Defendants failed to keep records in accordance with 12 N.Y.C.C.R. § 146-2.1.

163.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## NINTH CLAIM FOR RELIEF
### (Conversion)

164.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

165.    Defendants failed to compensate Plaintiffs for wages earned during the course of their employment with Defendants.

166.    As a result, Defendants willfully interfered with Plaintiff's, and the Classes rights to immediate possession of the full amount of these wages.

167.    Because of Defendants' unlawful conversion of Plaintiffs' compensation, and to which they are entitled to immediate possession of, Plaintiffs have suffered, and will continue to suffer, substantial economic damages.

## TENTH CLAIM FOR RELIEF
### (Alternatively, Unjust Enrichment and Quantum Meruit)

168.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

169.    Plaintiffs, and the Class, performed numerous and valuable services at the behest of Defendants.

170.    Plaintiffs, and the Class, were not paid for the reasonable value of those services.

171.    Defendants benefitted from Plaintiffs and the Classes services, at Plaintiffs' expense.

172.    Equity and good conscience require that Plaintiffs and the Class be paid the reasonable value for their services that were wrongfully withheld by Defendants in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### (Unlawful Deductions from Wages)

173.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

174.    Defendants unlawfully made deductions from wages earned by Plaintiffs and other members of the class action for "tips" and other improper deductions.

175.    Defendants unlawfully made deductions from wages earned by Plaintiffs and other

members of the class action for "rent" and other improper deductions.

176.    Defendants required Plaintiffs, the Class, and other FLSA Collective Plaintiffs to share part of the gratuities they received with employees other than similar employees in violation of N.Y. Lab. Law § 196-d and supporting N.Y. Debt. of Lab. regulations.

177.    The aforementioned unlawful deductions, and any other deductions from wages earned by Plaintiffs and other members of the putative class, are not similar to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization.

178.    Defendants therefore violated Labor Law § 196-d by withholding, and personally retaining, portions of gratuities of Plaintiffs and other members of the putative class action and violated Labor Law § 193 by making improper deductions from the wages of Plaintiffs and other members of the putative class action.

179.    Upon information and belief, Defendants' violations of Labor Law § 196-d and Labor Law § 193 were willful.

180.    By the foregoing reasons, Defendants have violated Labor Law § 190 *et seq*., 12 NYCRR § 137-2.5, 12 NYCRR § 142-2.10, and 12 NYCRR § 146-2.7, and are liable to Plaintiffs and other members of the putative class in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees, and costs.

### TWELFTH CLAIM FOR RELIEF
**(Civil Damages for Fraudulent Filing of Returns)**
**(26 U.S. Code § 7434)**

181.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again

herein.

182.    Defendants have fraudulently and willfully filed income tax returns for those years that Plaintiffs were employed by them and are therefore liable to Plaintiffs thereof.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays this Court grant as relief the following:

a.    Designating this action as a collective action on behalf of the collective action members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b) and appointing the plaintiff and the plaintiff's attorneys to represent the collective action members;

b.    To designate this action as a Rule 23 class action, and appoint the plaintiff and the plaintiffs' attorneys to represent the class members;

c.    Declaring that the practices complained of herein are unlawful under the FLSA and the N.Y. Lab. Law ;

d.    Awarding all unpaid compensation due under the FLSA and N.Y. Lab. Law;

e.    Awarding Plaintiffs liquidated damages due to Defendants' willful failure to pay minimum wage and overtime compensation, under the FLSA and the N.Y. Lab. Law;

f.    Awarding Plaintiffs an award of unpaid minimum wage, overtime, spread of hours, and uniform maintenance compensation, under the N.Y. Lab. Law;

g.    Awarding Plaintiffs damages as a result of Defendants' failure to furnish a notice at the time of hiring under the N.Y. Lab. Law;

h.    Awarding Plaintiffs damages as a result of Defendants' failure to furnish correct statements with each payment of wages under the N.Y. Lab. Law;

i.    Awarding Plaintiffs damages as a result of Defendants' failure to maintain records under the N.Y. Lab. Law and the F.L.S.A.;

j.    Awarding Plaintiffs damages for Defendants improper conversion wages;

32

k.    Awarding Plaintiffs damages for the reasonable value of their services that were wrongfully withheld by Defendants, who were unjustly enriched;

l.    On the ninth and tenth causes of action against Defendants, in an amount to be determined at trial, plus costs and fees;

m.    On the eleventh and twelfth causes of action against Defendants, in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees, and costs;

o.    Awarding Plaintiffs damages under 26 U.S. Code § 7434 for fraudulently filing tax returns;

p.    Awarding Plaintiff pre-judgment interest;

q.    Awarding Plaintiff post-judgment interest;

r.    Awarding Plaintiffs' attorneys fees and costs in this action; and

s.    Granting such other and further relief as this Court deems just and proper.

Dated:  June 14, 2019

MONTEIRO & FISHMAN LLP

By:____/S/_____
    Marcus Monteiro
*mmonteiro@mflawny.com*
91 N. Franklin Street, Suite 108
Hempstead, New York 11550
Telephone: (516) 280.4600
*Attorneys for Plaintiffs and Putative*
*Class and Collective Plaintiffs*